**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES FIELD RUDWALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 7627** |
| | ) | |
| **UBS FINANCIAL SERVICES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

 This case concerns an arbitration proceeding between UBS Financial Services Inc. (UBS), which prevailed in the arbitration, and James Field Rudwall. Rudwall filed in state court a petition to vacate the arbitration award, alleging that "there was evident partiality by an arbitrator" and that "the arbitrators exceeded their powers." 710 Ill. Comp. Stat. 5/12(a)(2)-(3); 9 U.S.C. § 10(2), (4). UBS removed the case from state court based on diversity jurisdiction and then cross-petitioned to confirm the arbitration award in its favor. For the reasons outlined below, the Court denies Rudwall's motion to vacate and grants UBS's petition to confirm the arbitration award.

**Background**

 Rudwall worked as a financial advisor at UBS from 2008 to 2016. As of the date of his resignation, Rudwall owed UBS an outstanding principal balance of $476,536.08 plus $142,900.70 in interest on five separate promissory notes he signed during his employment with UBS. The notes contained express arbitration clauses requiring any

disputes between the parties to be submitted to arbitration under the rules of the Financial Industry Regulatory Authority (FINRA).

In 2020, Rudwall filed a statement of claim in FINRA's arbitration forum, alleging that UBS included defamatory statements on his employment termination form, known in the industry as a Form U-5, and that it engaged in interference with respect to an offer Rudwall had received from a competing firm. In response, UBS counterclaimed, alleging that Rudwall had breached the five promissory notes on his loans from UBS and had been unjustly enriched.

In their arbitration agreement, the parties agreed that arbitration would proceed under the rules of the FINRA Code of Arbitration Procedure. The arbitration panel initially consisted of three arbitrators: Susan L. Walker, Gregory G. Gocek, and Michael Steinberg. Each arbitrator had previously submitted a disclosure report. These reports list an arbitrator's past employment history, publicly available awards in prior arbitrations in which they served, and other required information.

To ensure fair hearings with a diverse set of arbitrators, FINRA categorizes arbitrators into public and non-public arbitrators. Non-public arbitrators are those who have connections to the securities industry in the manner defined by FINRA Rule 13100(x). Public arbitrators have no such connection. For a given three-arbitrator proceeding, the parties identify preferences from a list of eligible public and non-public arbitrators, and FINRA typically chooses two public arbitrators, one of whom serves as chair, and one non-public arbitrator. FINRA Rules 13402(b), 12403(e).

In this case, Rudwall and UBS received a list of potential public and non-public arbitrators to choose from, including Gocek, Steinberg, and Walker. Based on FINRA

2

Rule 13100(x) and their disclosure reports, Arbitrators Gocek and Walker were classified as public arbitrators, and Arbitrator Steinberg was classified as a non-public arbitrator. After each party submitted its respective rankings, FINRA used its own algorithm to determine the three arbitrators who would hear the case. Given Arbitrator Walker's prior experience and designation as a public arbitrator, she served as the panel's chair.

After hearing two days of argument in the fall of 2023, Arbitrator Steinberg withdrew due to health issues. Rudwall and UBS both agreed to proceed without a replacement arbitrator, resulting in a two-person panel.

On June 6, 2024, the arbitration panel issued an award denying Rudwall's claims in their entirety and sustaining UBS's counterclaim, awarding UBS $476,536.08 for compensatory damages—the loan balances—and $142,900.70 for interest as of May 13, 2024. In July 2024, Rudwall filed a motion to vacate the award in the Circuit Court of Cook County. UBS timely removed the action to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441, 1446.

## Discussion

### A.    Rudwall's motion to vacate

It is unusual for a court to vacate an arbitration award. *See Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691 (7th Cir. 2004) ("Generally, a court will set aside an arbitration award only in very unusual circumstances.") (internal quotation marks and citations omitted); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all."). Under the governing Illinois statute, 710 Ill. Comp. Stat. 5/12,

and the Federal Arbitration Act, 9 U.S.C. § 10, a court may vacate an arbitration award only on very limited grounds that are listed in the statutes.

In this case, Rudwall seeks to vacate the award against him based on claims of "evident partiality" and the "arbitrators exceed[ing] their powers."  710 Ill. Comp. Stat. 5/12(a)(2)-(3); 9 U.S.C. § 10(a)(2), (a)(4).  Rudwall bases his contentions on three points.  First, he contends that Arbitrator Walker did not submit a disclosure that a motion to vacate was pending in one of her other arbitration cases, titled *Jason James Smitka vs. Client One Securities LLC, Michael Charles Tuma, and Mark Ronald Roberts*.  Second, Rudwall contends that Arbitrator Walker prevented Arbitrator Gocek from completing important questioning during the arbitration hearing.  Third, Rudwall contends that Arbitrator Gocek was misclassified as a "public" arbitrator instead of a "non-public" arbitrator.  He argues that these alleged errors deprived him of his right to a fair hearing.  710 Ill. Comp. Stat. 5/12; 9 U.S.C. § 10.

To establish "evident partiality," Rudwall must show that the "arbitrator's bias is 'direct, definite and capable of demonstration rather than remote, uncertain, or speculative.'"  *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000) (internal quotation marks and citation omitted).  To establish that an arbitrator exceeded his or her powers, Rudwall bears a "heavy burden" to show that the arbitrator acted "outside the scope of his contractually delegated authority"—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract.'"  *Oxford Health Plans LLC. v. Sutter*, 569 U.S. 564, 569 (2013) (internal quotation marks and citation omitted).

For the reasons explained below, the Court finds that none of the three alleged

4

instances of misconduct, even taken together, show that an arbitrator was biased or acted outside the scope of his or her contractually delegated authority. *Harter*, 220 F.3d at 553; *Oxford Health Plans LLC*, 569 U.S. at 569.

### 1. Arbitrator Walker's nondisclosure of *Smitka*

Rudwall contends that Arbitrator Walker did not disclose that a motion to vacate had been filed in *Smitka*, a case in which she had previously served as an arbitrator. He argues that this indicates improper bias. But though Rudwall argues that under FINRA guidelines, arbitrators hold a duty to disclose a motion to vacate, he leaves out a crucial detail—the FINRA Dispute Resolution Services Arbitrator's Guide states that arbitrators need to disclose only those motions to vacate that have been *granted*. *See* Rudwall Ex. B at 21. The *Smitka* motion had been denied.

The Court also notes that in her Arbitrator Disclosure Report, Arbitrator Walker disclosed 51 publicly available awards, including the award in *Smitka*. Rudwall could have discovered information about the case by researching it during the pendency of the arbitration and could have made his argument then, rather than waiting to raise this issue in a separate enforcement proceeding. By failing to do so, he has waived or forfeited the point. *See Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Loc.* 627, 358 F.3d 459, 462 (7th Cir. 2004) ("[P]arties must present. . . arguments to the arbitrator below in order to avoid waiver.") (internal quotation marks and citation omitted).

Finally, even if Arbitrator Walker had a duty to disclose the *Smitka* motion to vacate and Rudwall has not forfeited the point, the arbitrator's nondisclosure of the motion does not lead to a conclusion that she displayed evident partiality against

Rudwall. As UBS points out, the facts of the *Smitka* case have little to do with the case at hand. And this cuts against Rudwall's argument, because factual similarity is a relevant consideration in showing evident partiality based on non-disclosure. *See Prudential Inv. Mgmt. Servs., LLC v. Schipper*, No. 22 C 4497, 2024 WL 1254361, at *4 (N.D. Ill. Mar. 25, 2024) ("Based upon the current record, the cases are separate, unrelated, and inapposite factually and legally."). The *Smitka* case concerned a contractual dispute regarding commission fees to a medical business referral agreement, and the motion to vacate involved an alleged miscalculation because of an erroneous assumption about a financial quarter. In this case, the arbitration is between an employer and employee and involves the employee's failure to pay off five promissory notes, as well as allegations of defamation and interference with a contract.

Rudwall has not attempted to explain how the *Smitka* case is relevant here or, more importantly, how the nondisclosure of the motion to vacate establishes Arbitrator Walker's bias. In other words, Rudwall has not shown that the nondisclosure of the unsuccessful motion to vacate pending in the *Smitka* motion indicates a bias that was "direct, definite, and capable of demonstration"; Rudwall is merely speculating, which is insufficient to meet his burden. *See Harter*, 220 F.3d at 553. In fact, Rudwall basically concedes that the effect of the omitted information is "remote, uncertain, [and] speculative." *See id.* He states that he was denied the right to "even consider the meaningful background information as part of his decision-making process in select[ing]" whether to select Arbitrator Walker. *See* Mot. to Vacate at 6. But that is not the standard for providing "evident partiality." Rudwall is required to establish that the information's nondisclosure clearly demonstrated evident partiality on the part of

Arbitrator Walker.  He has failed to do so.

### 2.    Arbitrator Walker's line of questioning during arbitration

Next, Rudwall argues that Arbitrator Walker "shut down witness questioning by her fellow arbitrator in an effort to aid UBS's defense."  Pl.'s Reply to Def.'s Resp. to Mot. to Vacate at 2.  The transcript reflects that at one point during the proceedings, Arbitrator Walker said to Arbitrator Steinberg, "I would just caution that you're starting to raise issues that the parties may raise," to which Arbitrator Steinberg responded "I understand that.  I'm just -- let me see if I can phrase this a little differently.  We'll let this go.  We'll pick it up later."  Arbitrator Steinberg never revisited this line of questioning. Rudwall contends that Arbitrator Walker deprived Arbitrator Steinberg of his right to question witnesses and, in doing so, took on an overly broad role the chair of the panel. It is unclear whether Rudwall argues that this interaction demonstrates Arbitrator Walker's evident partiality, or that it reflects that she exceeded her powers, or both, so the Court assumes Rudwall argues both grounds.

First, as UBS points out, Rudwall did not raise this issue in his motion to vacate, but only in his reply, so he has forfeited this argument.  *Campos v. Cook County*, 932 F.3d 972, 976 n.2 (7th Cir. 2019) ("Parties waive arguments which they develop for the first time in a reply brief.").

But even if Rudwall has not forfeited the point, this episode during the hearing is insufficient to demonstrate evident partiality or that Arbitrator Walker exceeded her powers.  Arbitrator Walker did not interrupt any other questioning by Arbitrator Steinberg, who asked 19 questions during the proceedings.  During the single exchange that Rudwall identifies, Arbitrator Walker's point that Arbitrator Steinberg could be

venturing into areas reserved to the parties was appropriate and reasonable. The FINRA Dispute Resolution Services Guide states that "arbitrators should refrain from questioning a witness until all parties have finished their examination." *See* Rudwall Ex. B at 80. But Arbitrator Steinberg attempted to question the witness in the middle of questioning by the attorney for UBS, and before Rudwall's attorney began any questioning. *See* Rudwall Ex. A at 12-14. In short, Arbitrator Walker's comments appropriately called Arbitrator Steinberg's attention to the proper order of proceedings and the proper bounds of the arbitrators' roles. In short, Arbitrator Walker most certainly did not exceed her power as chair of the proceedings.

On the issue of "evident partiality," Rudwall has not explained how Arbitrator Walker's comments—which, from Arbitrator Steinberg's own comments, did nothing more than defer his opportunity to question until later, is indicative of a direct, definite, and demonstrable interest in the outcome of the arbitration. Among other things, Rudwall offers no explanation for why whatever the response to Arbitrator Steinberg's question might have been was essential to a fair hearing. In sum, based on the record before the Court, Arbitrator Walker's comment during Arbitrator Steinberg's questioning does not reflect that she exceeded her powers or displayed partiality.

### 3. Arbitrator Gocek's classification as a public arbitrator

As discussed earlier, FINRA classifies arbitrators as public and non-public arbitrators. Non-public arbitrators are those who have significant connections to the financial and security industries. Public arbitrators are all others. This categorization process is aimed at ensuring that arbitration proceedings include arbitrators who have expertise about industry-specific knowledge and also maintain fairness and impartiality

by including arbitrators without such affiliations.

Rudwall challenges the way Arbitrator Gocek was categorized. Specifically, Rudwall argues that Arbitrator Gocek was misclassified as a public arbitrator because his employment history suggests that he should have been classified as a non-public arbitrator.

Rudwall states that in his Arbitrator Disclosure Report, Arbitrator Gocek stated that he has served as a chartered financial assistant (CFA), a board member at the CFA Institute, which oversees the professional conduct of investment practitioners, and that he "focuses on service industries (financial services) . . . as part of his continued involvement with a management consulting firm he co-founded in 1991 wherein he advises industry clients on mergers and acquisitions, capital raising, strategic planning, and refinancing." Pl.'s Reply to Def.'s Resp. to Mot. to Vacate at 8. Rudwall argues that this, in turn, requires determining whether Gocek meets FINRA's requirement that a public arbitrator cannot have devoted 20 percent or more of his or her professional time, annually for 15 years or more, serving in certain financial and security industries listed in FINRA Rule 13100(x). Rudwall asks the Court to allow discovery on this issue so that he can identify how much time Arbitrator Gocek has spent in each of his prior roles.

The Arbitrator Disclosure Report asks questions that track the elements of FINRA Rule 13100(x) and therefore allows categorizing arbitrators as public or non-public. UBS argues that Arbitrator Gocek responded in the negative to each question in the report that relates to FINRA Rule 13100(x)'s restrictions on public arbitrators, and that as a result, he was qualified to serve as a public arbitrator. *See* Rudwall Ex. C. UBS further argues that because Arbitrator Gocek has served in a variety of other industries,

including retail, utilities, environmental service, and heath care, Rudwall is merely cherry-picking Gocek's positions to raise doubt about his classification.

The Court agrees that in his disclosure form, Arbitrator Gocek denied having been involved in any of the industries that would require him to be classified as a non-public arbitrator. Although the disclosure report did not require Arbitrator Gocek to provide the amount of time he had spent in the industries referenced in question Rule 13100(x), that is immaterial, because Gocek did not state that he had been in any of these industries in the first place. *See* Rudwall Ex. C.

Arbitrator Gocek disclosed all the information in question during the arbitrator selection process. If Rudwall had concerns with Arbitrator Gocek's background information and employment history, he should have raised them at the time. In any case, Rudwall's request for post-arbitration discovery would be appropriate only in a case involving "clear impropriety," which the record does not reflect here. *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010).

Even if Arbitrator Gocek was misclassified, however, that would be insufficient to vacate the arbitration award. "A 'trivial departure' from the parties' agreement [ . . . ] may not bar enforcement of an award." *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995). UBS cites to *Konz v. Morgan Stanley Smith Barney, LLC* as a case that is persuasive and instructive. In that case, a party also moved to vacate an arbitration award because an arbitrator was allegedly incorrectly classified as a public arbitrator. The court confirmed the award because "the selection . . . .was arguably in accordance with the parties' agreement . . . for 'arbitration in accordance with the rules

of the Financial Industry Regulatory Authority'" and because "[e]ven if [the arbitrator] was not qualified to serve a public arbitrator, his selection was a 'trivial departure' from the parties' agreement that did not prejudice Konz because the panel's decision was unanimous." *Konz v. Morgan Stanley Smith Barney, LLC*, No. 18 CIV. 5181 (GBD), 2018 WL 5818108, at *4 (S.D.N.Y. Oct. 17, 2018) (internal citation omitted).

Rudwall argues that *Konz* is distinguishable because the court in that case "*heavily* relied on the fact that the three arbitrator panel decision was unanimous in arriving at a conclusion that FINRA arbitrator misclassification was a 'trivial departure.'" Pl.'s Reply Br. at 9. That's not quite right. The court there concluded that the selection process had followed the parties' agreement. It considered the panel's unanimity only as a factor in deciding whether, if there had been a departure, it was prejudicial. These are distinct inquiries.

In this case, the parties likewise agreed to select arbitrators according to FINRA guidelines. The public and non-public classifications were made according to these guidelines. Rudwall has not explained how the FINRA guidelines were misapplied in a way that amounted to more than a "trivial departure" from the parties' agreement, nor has he provided an explanation for why such a misclassification would have given rise to bias or prejudice in this particular case.

In sum, Rudwall cannot sustain a claim that Arbitrator Gocek's misclassification indicates that the arbitrators in question acted upon evident partiality or exceeded their powers.

## B.    UBS's petition to confirm

In the absence of any viable objections to enforcing the arbitration award against

11

Rudwall, the Court grants UBS's timely petition to confirm the award. *See Hasbro*, 367 F.3d at 691-92 (indicating that confirmation of an arbitration award is "routine"); 9 U.S.C. § 9 ("[W]ithin one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."); 710 Ill. Comp. Stat. 5/12(d) ("If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.").

### Conclusion

For the foregoing reasons, the Court denies Rudwall's motion to vacate the arbitration award and grants UBS's petition to confirm the award [dkt. no. 9]. The parties are to submit by February 7, 2025 a joint status report with proposed language for entry of a judgment consistent with this decision.

Date:  January 30, 2025

_____
MATTHEW F. KENNELLY
United States District Judge